UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUSTIN RED LEGS,<br><br>Defendant. | 3:19-CR-30073-RAL<br><br><br>OPINION AND ORDER<br>GRANTING IN PART AND<br>DENYING IN PART<br>RULE 29 MOTION FOR<br>JUDGMENT OF ACQUITTAL |

In May of 2019, the United States indicted Dustin Red Legs (Red Legs) on one count of sexual exploitation of a child and one count of possession of child pornography, both relating to images of the genitalia of minor L.B.E. that Red Legs took and possessed on his cellphone on or about September 24, 2018. Doc. 1. In June of 2020, the United States added through a superseding indictment a count of aggravated sexual abuse of a child as the new Count I, alleging that Red Legs had committed a sexual act of intentional touching, not through the clothing, of the genitalia of L.B.E. on or about September 24, 2018. Doc. 57. Counts II and III then respectively became the same sexual exploitation of a child and the possession of child pornography counts relating to the images of the genitalia Red Legs took and possessed in his cellphone on or about September 24, 2018.

The case proceeded to a jury trial conducted from July 28 through July 31, 2020. Red Legs made a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure both at the close of the United States' case (which this Court initially denied and then reconsidered)

1

and at the end of all evidence (which this Court took under advisement pending the jury verdict). The jury returned a verdict of guilty on each of the three counts of the superseding indictment on July 31, 2020. Doc. 95. Red Legs then renewed the motion under Rule 29 for judgment of acquittal on all three counts. This Court wished to consider further whether judgment of acquittal under Rule 29 on Count I was appropriate. For the reasons explained in this Opinion and Order, this Court now grants the Rule 29 motion for judgment of acquittal on Count I for the aggravated sexual abuse of a minor, but denies the motion for judgment of acquittal on Counts II and III for sexual exploitation of a child and possession of child pornography.

**I.     Rule 29 Standard**

Under Rule 29(a) of the Federal Rules of Criminal Procedure, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Under Rule 29(b), a court "may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." Fed. R. Crim. P. 29(b).

Judgment of acquittal is appropriate "only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Hardin, 889 F.3d 945, 949 (8th Cir. 2018) (citation omitted). When considering a motion for judgment of acquittal, a district court must view the evidence in the light most favorable to the government, must resolve factual conflicts in the government's favor, and must accept all reasonable inferences that support the verdict. United States v. Benton, 890 F.3d 697, 708 (8th Cir. 2018). A court on a Rule 29 motion "is not to weigh the evidence or assess the credibility of witnesses." United States v. Bredell, 884

2

F.2d 1081, 1082 (8th Cir. 1989) (citing <u>Burks v. United States</u>, 437 U.S. 1, 16 (1978)). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." <u>United States v. Dupont</u>, 672 F.3d 580, 582 (8th Cir. 2012) (per curiam) (quotation omitted). "Jury verdicts are not lightly overturned," <u>United States v. Hood</u>, 51 F.3d 128, 129 (8th Cir. 1995), and indeed the undersigned judge has only once granted a Rule 29 judgment of acquittal previously, despite having encountered situations where this Court was skeptical that there was sufficient evidence for a reasonable jury to find defendants guilty. <u>See, e.g.</u>, <u>United States v. Colombe</u>, 18-CR-30013-RAL, Doc. 234 (D.S.D. Dec. 7, 2018) (explaining denial of Rule 29 motion in case involving retaliation against a witness where sufficiency of evidence was weak but there was a view of the evidence to support the verdict); <u>but see</u> <u>United States v. Two Bulls</u>, 18-CR-50166, Doc. 71 (D.S.D. April 22, 2019) (granting Rule 29 motion on false statement charge when defendant's recorded statements where he allegedly made the false statement revealed that the defendant made no such statement). Even though "[j]ury verdicts are not lightly overturned," <u>United States v. Shumaker</u>, 866 F.3d 956, 960 (8th Cir. 2017) (quotation omitted), "the government is not entitled to inferences based on conjecture and speculation," <u>United States v. Aponte</u>, 619 F.3d 799, 804 (8th Cir. 2010).

**II.     Facts and Reasonable Inferences Favorable to the United States**

The facts and circumstances surrounding the conviction for aggravated sexual abuse of a child cannot be separated from the facts and circumstances surrounding the convictions on sexual exploitation of a child and possession of child pornography. Indeed, as the very capable and candid Assistant United States Attorney trying the case acknowledged, the only evidence of aggravated

sexual abuse of a child was the images that form the basis for the convictions on sexual exploitation of a child and possession of child pornography.

The victim in this case is L.B.E., who in September of 2018 was a ten-year-old girl. Defendant Dustin Red Legs met L.B.E. through L.B.E.'s mother Amy.[1] At the time Red Legs and Amy began dating, L.B.E. was about five years old and L.B.E.'s younger brother was about three years old. Red Legs and Amy had three children together between 2013, when the relationship began, and April of 2017, when Red Legs and Amy were last together romantically. During that time, Red Legs was like a stepfather to L.B.E.

Amy and Red Legs had not been together between April of 2017 and September of 2018. In September of 2018, Amy saw Red Legs in Eagle Butte, followed him in her vehicle, and noticed him stop at the residence of a woman whom Amy associated with drug activity. Amy later talked with Red Legs and asked him to help with their children. Red Legs in September of 2018 had no permanent home, was working in construction for his brother, and was staying with his cousin. In September of 2018, Amy was living with her five children in a two-bedroom apartment rented to her mother, but her mother was staying elsewhere. Red Legs came to the apartment, spent the night of September 23, sleeping on the couch separate from Amy, and offered to help financially.

Amy was worried about Red Legs's possible drug use based on his history and where he had stopped in Eagle Butte. On the second night Red Legs stayed in the apartment, which was September 24, 2018, he returned from his construction job and left his wallet in Amy's bedroom, which she shared with their three children,[2] when he was preparing to shower. Amy looked in the

---

[1] In this Opinion and Order this Court uses the first name only for L.B.E.'s mother to insure greater privacy for the child.
[2] The three children Red Legs and Amy had together were all under the age of five years old at the time.

4

wallet for drugs, found none, but took a slip of paper on which Red Legs had written his email address and login information to a gmail account. Tr. Ex. 2.

On the evening of September 24, 2018, Red Legs, Amy, and the children slept as they had on the previous night. Amy slept in her own bedroom with the three youngest children. In the bedroom called "grandma's bedroom," L.B.E., who was ten years of age, slept with her eight-year-old younger brother. Red Legs then slept on the couch in the living room. L.B.E. and her younger brother went to sleep leaving a lamp or light on in grandma's bedroom. After Amy went to bed but before she was asleep, Amy saw Red Legs walk by her open bedroom door and enter grandma's bedroom, staying in the bedroom no more than a couple of minutes. Red Legs then left grandma's bedroom, passed Amy's open bedroom door, and returned toward the living room. Shortly afterwards, Amy saw Red Legs walk by in the hall again and enter into grandma's bedroom for another minute or two and then leave the bedroom. Red Legs then noticed Amy was awake in her own bedroom and asked her if there was a phone charger in grandma's bedroom. During this time, all of the children apparently were and remained asleep.

The next morning, on September 25, 2018, Red Legs took certain kids to school and returned to the apartment before going to work. Red Legs and Amy had a good talk, and Red Legs left for work at a rural construction site after the two of them hugged.

After Red Legs had left for work, Amy waited and then logged into Red Legs's gmail account to see whether his emails revealed possible drug use. She found nothing indicating drug activity. Amy then accessed photographs tied to Red Legs's gmail account looking for any photographs of drug activity. Instead, the most recent two photographs were of someone's vagina. Amy clicked on each photograph to enlarge it and was able to identify from the blankets in the

background,[3] the white underwear and black shorts pulled aside to reveal the genitalia, and a discolored fingernail[4] that the vagina depicted in the two images belonged to her ten-year-old daughter L.B.E. Amy took screenshots on her phone of the images she had accessed remotely from Red Legs's photographs tied to his gmail account. Tr. Ex. 4, 5. Red Legs called Amy shortly afterwards, after receiving a message that his gmail account had been accessed remotely, to ask Amy what sort of phone she had. Red Legs evidently lost cellphone coverage and the call dropped. Amy then called L.B.E.'s biological father, who directed her to call 911. Amy did so.

A patrol officer and detective from the Cheyenne River Sioux Tribe Law Enforcement (CRSTLE) arrived at Amy's apartment. CRSTLE contacted the Federal Bureau of Investigation (FBI) which in turn scheduled an appointment for L.B.E. at the South Dakota Child Assessment Center (SDCAC) in Pierre. Amy had her mother get L.B.E. from school, and within an hour's time L.B.E. and Amy were on their way to the SDCAC. At the SDCAC, a nurse practitioner gave L.B.E. a head-to-toe physical.[5] L.B.E. disclosed no abuse history and could not recall what happened, apparently having slept through the time when the images of her vagina were taken. The SDCAC nurse practitioner assessed and recorded that L.B.E. was a Tanner Stage 3 female in terms of her physical development, and at trial the nurse practitioner identified the images from Red Legs's gmail account being of the genitalia of a Tanner Stage 3 female.

Prior to leaving Eagle Butte, Amy and Red Legs again spoke by phone. Amy asked Red Legs how he could do what he did. Red Legs's response was to say "sorry" and to hang up. Amy

---

[3] There were two distinctive blankets in the background of the images that matched the bedding in grandma's bedroom.
[4] L.B.E. had pinched an index finger previously causing bleeding beneath the fingernail leaving it darkened. Part of her hand including the discolored fingernail can be seen in an image.
[5] There were no findings of injury to L.B.E.'s genitalia, but of course the absence of any injury to her genitalia does not disprove a sexual assault.

6

and Red Legs later on September 25, 2018, exchanged a series of text messages, which were introduced in evidence. Tr. Ex. 38. Those test messages included the following:

> Amy to Red Legs: Wth. Why'd you hang up on me?
> ...
> Amy to Red Legs: Are you going to tell me happened?
> Red Legs to Amy: With what?
> Amy to Red Legs: With [L.B.E.].[6]
> Red Legs to Amy: Nothing.
> ...
> Amy to Red Legs: Why did you have pictures of her genitalia?
> Amy to Red Legs: I thought you thought of her as your daughter. You've known her since she was 5 yrs old...and you did the worst possible thing that can ruin her life forever.
> Amy to Red Legs: Whyyyy?!
> Red Legs to Amy: Ill [sic] call you later.
> Amy to Red Legs: Call me now.

Tr. Ex. 38. There were no further text messages after that point.

At the SDCAC, FBI Special Agent Benjamin Plante seized Amy's cellphone, and she signed a consent to search. Special Agent Plante hired Justin Pederson of the South Dakota National Guard, who is an intelligence analyst with training in mobile phone forensics, to do a limited logical extraction of Amy's cellphone. Special Agent Plante also went to Eagle Butte to collect the underwear and shorts L.B.E. wore to bed on the night of September 24, 2018, and to take photographs of the apartment, including of the bedding in grandma's bedroom where L.B.E. and her younger brother slept on the night of September 24, 2018.

The limited extraction on Amy's cellphone, in addition to the text messages sent between Amy and Red Legs, yielded the screenshots that Amy had taken from Red Legs's Google images account. Tr. Ex. 4, 5. Because Red Legs had an Android cellphone linked to a gmail account,

---

[6] Amy used the actual first name of the child.

7

photographs that he took on his cellphone automatically linked to his gmail account, which is how Amy was able to see the images having remotely accessed Red Legs's gmail account.

Red Legs's cellphone itself was never located or seized. Red Legs's LG cellphone was a "burner phone" that can be discarded once the purchased data or minutes are consumed. Unable to obtain Red Legs's cellphone, Special Agent Plante issued a search warrant to Google for the gmail account and photographs associated with Red Legs's account. The information obtained from Google showed Red Legs's photographs included the same two child pornographic images that Amy had viewed on September 25 and of which Amy took screenshots that day. Those two images, Tr. Exs. 16, 17, had jpeg identifications of 0924182344.jpg and 0924182346.jpg, reflecting that the images were taken on September 24, 2018, at 23:44 and 23:46 (11:44 and 11:46 p.m.) respectively. The metadata revealed that an LG cellphone associated with LG camera VS425PP took the images. Tr. Ex. 18. A number of other photographs were taken on the same device with LG camera VS425PP shortly before the child pornographic images and likewise linked to Red Legs's gmail account automatically. Those photographs included nonpornographic photographs of two of Amy and Red Legs's children sleeping, construction site photographs, and one partial selfie of Red Legs himself at the construction site. Tr. Exs. 20, 21.

The person who took the two pornographic images of L.B.E.'s genitalia used the fingers of his left hand to move L.B.E.'s white underwear and in turn her black shorts aside and away from her vagina. The pornographic images thus capture a portion of the culprit's left index finger, the knuckle of his left middle finger and a bit of his left ring finger. Tr. Exs. 16, 17, 27 (genitalia pixilated), 28 (genitalia pixilated). In those photographs, the culprit's fingers are not actually touching skin-to-skin L.B.E., but rather are touching the interior of the elastic on the side of the underwear in order to pull the underwear and in turn the shorts away from the genitalia to reveal

the vagina. That is, the person who took the photographs hooked his left middle finger under the elastic of the side of the underwear beside the upper leg of L.B.E. The person then pulled the underwear outward and toward L.B.E.'s waist to reveal her genitalia. The underwear and shorts were not removed. Tr. Ex. 16, 17.

Because a portion of the fingers of the culprit's left hand were depicted in the pornographic images, Special Agent Plante took photographs of Red Legs's left hand and sent those photographs together with the pornographic images to FBI forensic examiner Anthony Imel. Imel has expertise in comparison analysis, including comparison of images of body parts such as fingers and hands with known images from suspects. Imel was dissatisfied with the quality of the known photographs of Red Legs's left hand and fingers and asked Special Agent Plante to take additional known images of Red Legs's fingers. With these better-known images, Imel was able to identify seven unique characteristics of the left knuckle, including a mole, that were the same between known photographs of Red Legs's left middle finger knuckle and the knuckle in one of the pornographic images at issue. Tr. Ex. 27. Imel also identified nine unique features between the left index finger in one of the pornographic images at issue with the known left index finger of Red Legs. That is, the mole and the unique creases in the knuckle and finger depicted in a pornographic image of L.B.E.'s genitalia matched those of known images of Red Legs's fingers. Tr. Ex. 27. Defense counsel questioned at length Imel's methodology and called defense expert Dr. Glenn Langenburg, an expert in fingerprint analysis, to criticize knuckle crease analysis as being of dubious reliability. However, the evidence was ample to conclude beyond a reasonable doubt that Red Legs took the pornographic images on his LG cellphone which linked to his gmail account.

9

The United States established that Red Legs was a member of the Standing Rock Sioux Tribe. Tr. Ex. 40. No party questioned that the place where any offense took place was within what is considered Indian country. Tr. Ex. 39.

As mentioned above, this Court considered a Rule 29 motion at the end of the United States' case, initially pondering that a jury might infer from the photographs that there may have been aggravated sexual abuse of the child by skin-to-skin intentional touching of her genitalia, but later second guessing that supposition. Ultimately, this Court took under advisement the Rule 29 motion as it related to aggravated sexual abuse of a child. At the close of the evidence and again after the guilty verdicts on all counts, Red Legs renewed the motion for judgment of acquittal, which this Court now grants in part and denies in part.

### III. Discussion

#### A. Count I – Aggravated Sexual Abuse of a Child

In Count I of the superseding indictment, the United States charged Red Legs as follows:

> On or about the 24th day of September, 2018, at Eagle Butte, in Dewey County, in Indian country, in the District of South Dakota, the defendant, Dustin Red Legs, an Indian, did knowingly engage in and attempt to engage in a sexual act, with [L.B.E.], a child who had not attained the age of 12 years, that is, the intentional touching, not through the clothing, of the genitalia of [L.B.E.], with an intent to abuse, humiliate, harass, and degrade [L.B.E.], and arouse or gratify the sexual desire of Dustin Red Legs, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D).

Doc. 57. The elements of the offense charged in Count I on which this Court instructed the jury are the following:

> *One*, that on or about the 24th day of September, 2018, the defendant, Dustin Red Legs, did knowingly engage in or attempt to engage in a sexual act with [L.B.E.];
>
>> A "sexual act" for purposes of this instruction means the intentional touching, not through the clothing, of the genitalia of another person with the intent either to abuse, humiliate, harass or degrade, or to arouse or gratify the sexual desire of any person.

10

>*Two*, that [L.B.E.] had not attained the age of twelve years at the time of the sexual act;
>*Three*, that the defendant, Dustin Red Legs, is an Indian; and
>*Four*, that the offense took place in Indian country.

Doc. 94 at Instr. 6. See <u>United States v. DeCoteau</u>, 630 F.3d 1091, 1093 n.2 (8th Cir. 2011) ("To prove aggravated sexual abuse of a minor, the government needed to show that [defendant] (1) knowingly engaged in a sexual act with a person under the age of 12, (2) is an Indian, and (3) the offense occurred in Indian Country.").

The elements listed as two, three, and four are not at issue. L.B.E. was ten years old at the time, Red Legs is a member of the Standing Rock Sioux Tribe, and the alleged offense took place in what is considered to be Indian country.

As for the first element, the United States conceded that the only evidence of Red Legs's intentional touching, not through the clothing, of L.B.E.'s genitalia was the pornographic images themselves. The jury found beyond a reasonable doubt that Red Legs engaged in sexual exploitation of L.B.E. and possession of child pornography through taking of those photographs. There is ample, and indeed overwhelming, evidence to support those conclusions. However, the images themselves do not actually show Red Legs knowingly engaging in or attempting to engage in a sexual act of intentional touching, not through the clothing, of L.B.E.'s genitalia.

Red Legs made no statement to law enforcement that was introduced in evidence and did not testify during trial. Red Legs's communications with Amy can be viewed as an acknowledgement of his doing something inappropriate towards L.B.E., but provide little additional insight into what he knowingly did or attempted to do. Accordingly, the United States properly and candidly acknowledged that the only evidence of the aggravated sexual assault of a child were the photographs themselves. There are two such photographs, unsavory to view but

11

available in the record with the child's genitalia pixelated out. Tr. Ex. 27. In both of those photographs, Red Legs's fingers are not touching skin-to-skin to L.B.E.'s genitalia, but pulling back and away from the genitalia the elastic on the side of her underwear so that the image depicts her full vagina. Tr. Ex. 16, 17.

The question then becomes whether a reasonable jury could infer from the pornographic images and surrounding circumstances that Red Legs intentionally touched, not through the clothing, L.B.E.'s genitalia, alongside the offenses involving sexual exploitation of a child and possession of child pornography through taking the photographs. On that question there is a bit more to consider than just the photographs. Red Legs took two trips down the hallway at a time when Amy and the three youngest children were in one bedroom and L.B.E. and her eight-year-old brother were asleep in the other bedroom known as grandma's bedroom. The apartment is fairly small. Tr. Ex. 1. Red Legs spent, according to Amy, a minute or two or a couple minutes in grandma's bedroom on each occasion. The evidence established that one image was taken at 11:44 p.m. and the other image at 11:46 p.m. on September 24, 2018. L.B.E. herself recalled nothing and slept through the incident. L.B.E.'s eight-year-old brother sleeping in the same room as L.B.E., and presumably on the same bed[7] as L.B.E., did not awaken either. Amy's suspicions were not particularly aroused by Red Legs's two brief trips into grandma's bedroom, though she thought it odd that Red Legs would be looking for a phone charger in that bedroom. That is, Amy did not leave her own bedroom to check on what was occurring and did not question Red Legs at the time as to why he went into grandma's bedroom. Red Legs's intentions evidently were to view and photograph L.B.E.'s genitalia without awakening L.B.E. or her brother and without getting

---

[7] There was just one bed in grandma's bedroom in September of 2018. Tr. Ex. 1.

caught by Amy. There is no evidence that Red Legs's aim was to knowingly engage in or attempt to engage in the sexual act of touching L.B.E.'s genitalia skin-to-skin.

The United States charged a sexual act under 18 U.S.C. § 2246(2)(D), which is from where this Court drew its definition in the instruction on "sexual act." Section 2246(2)(D), for a sexual act requires "the intentional touching, not through the clothing, of the genitalia of another person who had not attained the age of sixteen years with an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person." See United States v. White Bull, 646 F.3d 1082, 1087 (8th Cir. 2011) (applying 18 U.S.C. § 2246(2)(D) to determine whether there was sufficient evidence for a reasonable jury to convict the defendant of aggravated sexual abuse of a child). To be guilty of aggravated sexual abuse under 18 U.S.C. § 2241(c), Red Legs must have "knowingly engage[d] in a sexual act with another person who has not attained the age of 12."[8] DeCoteau, 630 F.3d at 1096.

The images themselves do not depict aggravated sexual abuse of a child because they do not show the requisite "sexual act" of "intentional touching, not through the clothing," of L.B.E.'s genitalia. Rather, the images show a hand pulling underwear to the side and away from the body (and not down or off) to reveal the vagina of a sleeping child. It is only by an inference based on speculation that he did something more that anyone, reasonable jury included, could believe that a sexual act of knowingly engaging in intentional skin-to-skin touching occurred. What is left is conjecture and speculation that Red Legs may have taken an additional step beyond creating

---

[8] This Court instructed on an attempt to engage in a sexual act as well. The United States did not present evidence that Red Legs was attempting to engage in a sexual act and was somehow interrupted. Indeed, Red Legs left the room twice on his own without any outside provocation. The act that Red Legs intended to engage in appears to have been completed; that is, Red Legs took two photographs of L.B.E.'s genitalia, which he exposed by pulling aside her underwear and shorts without awakening her.

13

pornographic images of touching L.B.E.'s genitalia without awakening her,[9] but "the government is not entitled to inferences based on conjecture and speculation" for a jury verdict to stand. Aponte, 619 F.3d at 804. Thus, this Court must grant the Rule 29 motion for judgment of acquittal on Count I.

### B.   Sexual Exploitation of Child and Possession of Child Pornography

Red Legs's motion for judgment of acquittal is easy to deny on Count II for sexual exploitation of child and Count III for possession of child pornography. Count II of the superseding indictment charged sexual exploitation of a child, and this Court instructed the jury on the following elements:

>  *One*, at the time alleged, [L.B.E.], was under the age of eighteen years;
>
>  *Two*, the defendant, Dustin Red Legs, knowingly employed, used, persuaded, induced, enticed or coerced [L.B.E.] to engage in sexually explicit conduct;
>
>>  A person is "used" if they are photographed or videotaped.
>>  "Sexually explicit conduct" means actual or simulated sexual intercourse, or lascivious exhibition of the genitals or public area of any person.
>
>  *Three*, the defendant acted with the purpose of producing a visual depiction of such conduct; and
>
>>  The term "visual depiction" includes any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means. It includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.
>
>  *Four*, the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

---

[9] Of course, aggravated sexual abuse can be committed without awakening the victim, such as with a soundly sleeping child or a person who is intoxicated or under the influence of drugs.

14

Doc. 93 at Instr. 9. See United States v. Boyle, 700 F.3d 1138, 1146 (8th Cir. 2012) (quoting 18 U.S.C. § 2251(a) which makes it unlawful for a person "'knowingly' to employ, use, persuade, induce, entice, or coerce 'any minor to engage in. . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct'").

On the elements of sexual exploitation of a child, there was ample evidence that L.B.E., a child under the age of 18, was knowingly used by Red Legs to be photographed for purposes of creating a visual depiction containing sexually explicit conduct in the form of lascivious exhibition of L.B.E.'s genitals. The LG cellphone used by Red Legs to take the photographs had traveled in interstate commerce. The pornographic images were tied to Red Legs's LG cellphone and gmail account, alongside nonpornographic photographs of Red Legs's children, a construction site at which Red Legs worked, and a partial selfie of Red Legs. Tr. Ex. 16, 17, 18, 19, 20, 21. A reasonable jury could surmise that Red Legs's fingers were in the pornographic images pulling back L.B.E.'s underwear and shorts. Tr. Ex. 27. A reasonable jury could view Red Legs's communications with Amy after the fact as an acknowledgement of wrongdoing. Tr. Ex. 38.

This Court instructed the jury on Count III, possession of child pornography as containing three elements:

> *One*, that on or about the 24th day of September, 2018, the defendant, Dustin Red Legs, knowingly possessed material that contained a visual depiction of child pornography;
>
> > The term "visual depiction" includes any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means. It includes undeveloped film and videotape, and data stored on a computer disk or by electronic means which is capable of conversion into a visual image.
> >
> > The phrase "child pornography" means any visual depiction of a minor engaging in sexually explicit conduct.

15

*Two*, that the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and

> "Sexually explicit conduct" means actual or simulated sexual intercourse, or lascivious exhibition of the genitals or public area or any person.

*Three*, that the material containing the visual depiction was produced using materials that had been mailed, shipped, transported, or transported by computer in interstate or foreign commerce.

Doc. 93 at Instr. 11. See United States v. Croghan, No. 18-3709, 2020 WL 5086572, at *10 (8th Cir. Aug. 28, 2020) (providing a broad overview of the elements of possession of child pornography); see also United States v. Kain, 589 F.3d 945, 947–48 (8th Cir. 2009) (discussing 18 U.S.C. §§ 2252A(a)(5)(B), 2256).

On the elements Count III charging possession of child pornography, there was ample evidence that Red Legs possessed material containing a visual depiction of child pornography in the form of the lascivious exhibition of L.B.E.'s genitals. After all, Google's response to a search warrant for Red Legs's gmail account revealed the existence of those images tied to his account. Tr. Ex. 16, 17, 18. The pornographic material involved interstate commerce in that Red Legs possessed it on his LG cellphone, which traveled in interstate commerce.

In short, Red Legs had gone into the bedroom while L.B.E. was asleep, cautious not to awaken her, and pulled her underwear and shorts to the side and away from her body to expose her genitalia to take two photographs of it. By doing so, Red Legs engaged in sexual exploitation of the child and possessed the two images of child pornography on his phone thereafter. While that conduct plainly supports conviction on Counts II and III of the superseding indictment, it does not support conviction of aggravated sexual abuse of a child as charged in Count I because of a dearth of any evidence that Red Legs intentionally touched, not through the clothing, L.B.E.'s genitalia.

## IV. Conclusion

For the reasons explained above, it is hereby

ORDERED that the Rule 29 motion for judgment of acquittal is granted with respect to Count I and that judgment of acquittal enters on Count I of the superseding indictment. It is further

ORDERED that the Rule 29 motion for judgment of acquittal is denied as to Counts II and III of the superseding indictment.

DATED this 11th day of September, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE